UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JEREMY MCLAUGHLIN, | ) |
| | ) |
| Plaintiff, | ) 2:20-CV-00243-DCLC-CRW |
| | ) |
| vs. | ) |
| | ) |
| SULLIVAN COUNTY BOARD OF | ) |
| EDUCATION and DAVID COX, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendants' Motion to Dismiss for Failure to State a Claim [Doc. 11]. Plaintiff responded in opposition [Doc. 22]. This matter is now ripe for resolution. For the reasons that follow, Defendants' Motion to Dismiss [Doc. 11] is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND**

On August 13, 2020, the Sullivan County Board of Education held a meeting to discuss the possibility of returning to in-person learning amid the COVID-19 pandemic [Doc. 8, ¶ 6]. At least one student and numerous parents spoke at the meeting and urged the Board to return to in-person learning [*Id*.]. Plaintiff Jeremy McLaughlin, a teacher at Sullivan Central High School, voiced his concerns that a return to in-person learning would not be safe [*Id*. at ¶ 7]. Later, the mother of the student who spoke at the meeting posted on Facebook, critiquing Plaintiff "for the tone of his remarks at the Board meeting and for 'dismissing' her daughter" [*Id*. at ¶ 10]. The mother also posted screenshots of Plaintiff's personal Facebook posts, which she found offensive and commented, "Hopefully this Sullivan County teacher will be losing his job. He will think twice

1

before being a condescending prick to my child or anyone's child again. Go look at his [Facebook]. I didn't post everything." [*Id*.]. Plaintiff alleges that the mother and at least three other individuals emailed complaints about Plaintiff to David Cox, the Director of Sullivan County Public Schools, and members of the Board to influence them to discipline or dismiss Plaintiff [*Id*. at ¶ 11].

On August 18, 2020, the Human Resources Supervisor for the Sullivan County Schools emailed Plaintiff informing him of the complaints and asking him to respond to the following two questions relating to his Facebook posts:

> Your social media activity, specifically the use of profane and sometimes vulgar language on your Facebook timeline (PDF of Examples Attached). Specifically, as a teacher and as a role model, do you believe utilizing that type of language sets an appropriate example for students and/or elicits confidence in you from their parents?
>
> Your social media statements which seemed to both admit multiple votes during the teacher survey, as well as seemed to encourage non-employees to vote during the same survey. Specifically, do you believe those were appropriate actions by a professional educator?

[*Id*. at ¶ 12]. Plaintiff responded and, on August 20, 2020, he received a second letter with copies of the complaints against him [*Id*. at ¶ 13]. On September 3, 2020, Director Cox notified Plaintiff that he was being suspended for three days without pay due to "unprofessional behavior while utilizing social media" and "unprofessional attitude and poor judgment when failing to show remorse related to such poor behavior" [Doc. 8-1, pg. 3]. Specifically, Director Cox referenced the following activity by Plaintiff on Facebook:

> shared a Twitter post mocking possible violence against a student who supports President Trump; utilized the f-word when commenting on an NPR news story; shared a photo of a young man in a way that seems to infer low intelligence, lying, and selfishness; utilized the phrase "you look like you're wearing your side chick's panties on your face" when mocking a man you saw at Food City; and sharing a meme with the phrase "Go F*** Yourself" when criticizing people for not wearing masks.

2

[*Id*. at pgs. 1–2]. Director Cox went on to explain that "[p]erhaps even more troubling were" Plaintiff's Facebook comments about a faculty re-opening survey, which he interpreted as an attempt to explain to others how to vote on the survey more than once and to encourage non-faculty members to vote [*Id*. at pgs. 2–3]. Plaintiff posted the link to the survey and commented, "It's interesting how survey gizmo uses cookies to track if you've responded or not. If you're in incognito mode, it's like it doesn't even know that you voted. Weird!" [*Id*. at pg. 2]. Director Cox informed Plaintiff that one complaint he received stemmed from Plaintiff's "alleged bias and/or harassment toward certain students in classroom settings" but an investigation revealed no evidence to substantiate such complaint [*Id*. at pg. 1]. Director Cox also explained that he received complaints about Plaintiff's speech at the August 13th Board meeting, but that he did not consider such complaints when making his decision [*Id*.].

Pursuant to Tenn. Code Ann. § 49-5-512(d)(2), Plaintiff requested a conference with Director Cox, which the parties conducted on September 22, 2020 [Doc. 8, ¶ 15].[1] On September 24, 2020, Director Cox issued a decision letter pursuant to Tenn. Code Ann. § 49-5-512(d)(4) affirming the three-day suspension [Doc. 8-2]. On October 22, 2020, Plaintiff filed a Complaint and Petition for Writ of Certiorari in the Chancery Court for Sullivan County, Tennessee against Director Cox and the Board seeking judicial review of the suspension pursuant to the Tennessee Teachers' Tenure Act, Tenn. Code Ann. § 49-5-513, and asserting a First Amendment retaliation claim under 42 U.S.C. § 1983 [Doc. 1-1, pgs. 6–12]. Defendants removed the action to this Court on November 18, 2020 [Doc. 1] and, on December 3, 2020, Plaintiff filed an Amended Complaint

---

[1] Tenn. Code Ann. § 49-5-512(d) provides the procedure for disciplinary suspension of a tenured teacher for up to three days. Under subsection (d)(2), the director must provide a conference upon the teacher's request at which the teacher may offer rebuttal or any other pertinent information for the director to consider in making its disciplinary decision.

and Petition for Writ of Certiorari [Doc. 8]. Defendants now seek dismissal of Plaintiff's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. 11].

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In addition to the allegations contained in the complaint, a court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" in ruling on a 12(b)(6) motion to dismiss. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

## III. ANALYSIS

### A. First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against him in violation of the First Amendment by suspending him for his speech at the August 13th Board meeting and for his posts and comments on his Facebook page. Defendants dispute Plaintiff's First Amendment retaliation claim and assert that Director Cox is entitled to qualified immunity. To state a claim for First Amendment retaliation, Plaintiff, as a public employee, must demonstrate the following:

4

> (1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused [him] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [his] constitutional rights.

*Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (citations omitted). Once Plaintiff makes this showing, the burden shifts to Defendants "to show by a preponderance of the evidence 'that it would have taken the same action even in the absence of the protected conduct.'" *Id.* (quoting *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999)).

### 1. Constitutionally Protected Activity

Plaintiff alleges two instances of protected activity—his speech at the Board meeting and his Facebook posts and comments. For Plaintiff's speech to be protected by the First Amendment, he must allege facts showing that he spoke "as a citizen addressing matters of public concern[,]" *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006), and that his interest in commenting on such matters outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ("the *Pickering* balancing test"). The determination of whether speech constitutes protected activity is a question of law. *Leary*, 228 F.3d at 737. Defendants effectively concede that Plaintiff's speech at the Board meeting is protected activity [Doc. 12, pg. 2]. Plaintiff spoke as a citizen about returning to in-person learning during the COVID-19 pandemic, which is unquestionably a matter of public concern, and Plaintiff's interest as a citizen in speaking on this matter outweighs the State's interest as an employer. *See Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 578 (6th Cir. 1997) ("Speech on matters directly affecting the health and safety of the public is obviously a matter of public concern."); *see also Ellison v. Knox Cnty.*, 157 F. Supp. 3d 718, 722 (E.D. Tenn. 2016) (holding that matters affecting the safety of schoolchildren and faculty are of public concern).

5

Defendants' brief focuses on Plaintiff's Facebook posts and comments. Defendants assert that Plaintiff's Facebook activity does not address matters of public concern because any references to the COVID-19 pandemic are incidental to the message conveyed [Doc. 12, pg. 10]. Plaintiff argues that Defendants' characterizations of the posts and comments are drawn from Director Cox's suspension letter and that the Court, at this stage, may only consider the Facebook activity to the extent it is referenced in the Amended Complaint and must take such allegations as true [Doc. 22, pg. 8].

In the Amended Complaint, Plaintiff alleges that his Facebook activity "consisted of protected speech on matters of public concern, which [he] engaged in as a private citizen on his own time when he was not working." [Doc. 8, ¶ 20]. While Plaintiff is not required to alleged "detailed factual allegations," he is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. As stated previously, the determination of whether speech constitutes protected activity is a question of law, *Leary*, 228 F.3d at 737, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Plaintiff neither detailed his Facebook posts at issue nor attached them as exhibits to his Amended Complaint.

In the absence of sufficient factual allegations in the Amended Complaint, the Court must look to the suspension and decision letters, which are properly considered in ruling on Defendants' motion to dismiss because they are attached as exhibits to the Amended Complaint. *See Amini*, 259 F.3d at 502. With respect to Plaintiff's Facebook posts, Plaintiff contends that "a cursory review of Director Cox's letter shows they would be protected speech" because they "were concerned with the COVID-19 pandemic and whether masks should be worn in public settings, both of which were undoubtedly matters of public concern and debate throughout 2020." [Doc. 22, pg. 9, n.4]. Nonetheless, Director Cox's letters merely contain interpretations and

6

summarizations of the posts, which do not shed light on the content, form, and context, which the Court must examine to determine whether such speech addresses a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 147–48 (1983). Therefore, even construing the facts in the light most favorable to Plaintiff, he has failed to allege sufficient facts showing that his Facebook posts are protected.

Likewise, most of Plaintiff's comments regarding the faculty re-opening survey are illegible in Director Cox's letters. The only legible comment is one in which Plaintiff informed others that the survey website, Survey Gizmo, does not recognize how many times a person votes if they are "in incognito mode" in their web browser. [Doc. 8-1, pg. 2; Doc. 8-2, pg. 1]. While the initial post regarding the survey arguably addresses a matter of public concern, because the survey relates to re-opening schools during the COVID-19 pandemic, Plaintiff's comment, which Defendants take issue with, does not go to the substance or adequacy of the survey itself. Rather, Plaintiff shared the link with non-faculty members on his public Facebook post with implied instructions on how to circumvent the system and complete the survey multiple times. This comment "cannot be fairly considered as relating to any matter of political, social, or other concern to the community" and, therefore, it is not protected speech. *Connick*, 461 U.S. at 146.

Even if Plaintiff's comment could be construed as addressing a matter of public concern, an application of the *Pickering* balancing test leads to the same conclusion that the speech is not protected. In balancing Plaintiff's interests as a citizen and the State's interests as an employer, the Court must consider "the manner, time, and place" of the speech, as well as "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570–

7

573).  "These considerations…make apparent that the state interest element of the test focuses on the effective functioning of the public employer's enterprise." *Id*.  Although Plaintiff commented on his personal Facebook post, his comment was available to the public and related to a survey which the school circulated solely to faculty members.  Additionally, his comment went beyond giving the general public access to the survey by instructing them on how to take the survey multiple times.  Implying non-faculty members could take the survey in "incognito mode" would lead to inaccurate results and certainly impede the efficient functioning of the school administration.  Therefore, to the extent Plaintiff's comment addresses a matter of public concern, the State's interest in promoting efficiency outweighs any interest Plaintiff had in making his comment, and it is not protected.

Based on the foregoing, Plaintiff has failed to state a claim with respect to his Facebook activity.  Nonetheless, Plaintiff's protected speech at the Board meeting must be examined under the final two requisite elements—whether Defendants took adverse action and, if so, whether such action was motivated, at least in part, by the protected conduct.

### 2.    Adverse Action and Causation

"To establish an adverse action for First Amendment retaliation purposes, a plaintiff must show that the action would chill or silence a person of ordinary firmness from future First Amendment activities." *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019) (citations omitted).  For discipline to qualify as adverse action, "an employer need not deploy its full power to discharge an employee. Adverse actions beyond those that create only de minimis negative consequences offend the Constitution." *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021). Here, Director Cox suspended Plaintiff without pay for three days.  Although a three-day suspension is not an extensive amount of time, a suspension without pay creates negative

8

consequences beyond the de minimis level and would likely "chill or silence a person of ordinary firmness" from speaking in the future. *Sensabaugh*, 937 F.3d at 628.

The final inquiry is whether there is a causal connection between the protected speech and the adverse action. "[T]he court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003). Defendants assert that they made it clear to Plaintiff that they suspended him solely for his Facebook activity and that they did not consider his speech at the Board meeting in their decision [Doc. 12, pg. 2]. Plaintiff alleges that Defendants' reliance on his Facebook activity is pretextual and that Defendants suspended him, at least in part, because of his speech at the Board meeting [Doc. 8, ¶¶ 17–19]. "A defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir. 2010).

Here, construing the Amended Complaint in the light most favorable to Plaintiff, there are sufficient factual allegations for a reasonable juror to infer that Plaintiff's suspension was motivated, at least in part, by his speech at the Board meeting. For instance, Plaintiff spoke at the Board meeting on August 13, 2020 and the suspension letter from Director Cox is dated just three weeks later, on September 3, 2020. "Temporal proximity between the protected conduct and the adverse action by the state actor 'alone may be significant enough to constitute indirect evidence…to create an inference of retaliatory motive.'" *Id*. at 283 (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)). Moreover, Director Cox admits that some of the complaints he received referenced Plaintiff's speech at the Board meeting. [Doc. 8-1, pg. 1].

Of course, on summary judgment or at trial, Defendants may rebut this allegation by establishing that they were not motivated by Plaintiff's speech at the Board meeting. However, application of the burden-shifting analysis is not appropriate on a Rule 12(b)(6) motion to dismiss.

9

*See Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007). Plaintiff's claim may only be dismissed if "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012). Based on the foregoing, Plaintiff has alleged sufficient facts to support his claim that he engaged in protected speech that motivated Defendants, at least in part, to take adverse action against him. Therefore, Plaintiff's Amended Complaint states a plausible First Amendment retaliation claim with respect to his speech at the Board meeting.

### 3. Qualified Immunity

Defendants assert that Director Cox is entitled to qualified immunity for his actions in suspending Plaintiff because such actions did not violate a clearly established constitutional right [Doc. 12, pgs. 18–21]. The doctrine of qualified immunity shields government officials from liability for performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts examining a qualified immunity defense "must engage in a two-step inquiry…." *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001). "First, the court must ask whether the plaintiff in the civil action has demonstrated the violation of a constitutionally protected right." *Id*. As stated above, Plaintiff has alleged sufficient facts to state a claim, at least at the pleading stage, for First Amendment retaliation based on his speech at the August 13th Board meeting.

Consequently, the Court "must examine 'whether the right is so 'clearly established' that a reasonable official would understand that what he is doing violates that right.'" *Hardy*, 260 F.3d at 671 (quoting *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996)). It is clearly established that a public employee has the right to speak as a citizen on matters of public concern. *Rankin*, 483 U.S. at 383 ("It is clearly established that a State may not discharge an

10

employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); *Connick*, 461 U.S. at 142 ("For at least 15 years, it has been settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."); *Pickering*, 391 U.S. at 574 ("[A] teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment."). Considering Plaintiff has adequately stated a claim for violation of his First Amendment rights and such rights were clearly established at the time of the suspension, Director Cox's qualified immunity defense is denied.

### B. Tennessee Teachers' Tenure Act

The Tennessee Teachers' Tenure Act governs, in relevant part, the grounds and procedures for dismissal or suspension of tenured teachers. *See* Tenn. Code. Ann. § 49-5-511. A tenured teacher who is suspended by the director for three days or less is entitled to written notice of the suspension, the reasons for the suspension, an explanation of the evidence supporting the decision, and copies of documents relied upon by the director in reaching the decision. § 49-5-512(d)(1). Within five days of receiving the suspension letter, the teacher may request a conference with the director, which must be recorded. § 49-5-512(d)(2), (3). Within ten days of the conference, the director must issue a written decision and. § 49-5-512(d)(4). A tenured teacher who is suspended pursuant to these procedures may seek judicial review through a statutory writ of certiorari. § 49-5-513(a). The Act provides that "[t]he review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing" and additional evidence may be admitted "to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." § 49-5-513(g).

The parties disagree on the applicable standard of review for Plaintiff's petition. Defendants take the position that a common-law writ of certiorari standard applies [Doc. 12, pg.

4]. Under this standard, "the scope of review is limited to the record to determine as a question of law whether there is any material evidence to support the agency's findings." *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983). Plaintiff, on the other hand, contends that a *de novo* standard of review applies [Doc. 22, pg. 14]. Under either standard, the Court must review the written record of the September 22, 2020 Director's Conference [Doc. 7-1] and Plaintiff is entitled to an opportunity to submit additional evidence to "establish arbitrary or capricious action or violation of statutory or constitutional rights…." § 49-5-513(g). Therefore, judicial review under the Tenure Act is not appropriate at this stage of the proceedings.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendants' Motion to Dismiss [Doc. 11] is **GRANTED** in part and Plaintiff's Section 1983 First Amendment retaliation claim as it relates to his Facebook activity is **DISMISSED WITHOUT PREJUDICE**. Defendants' motion is **DENIED** as to Plaintiff's remaining First Amendment retaliation claim under Section 1983 and the Tennessee Teachers' Tenure Act.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge